**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOSEPH W. PRINCE and          :
BETTY JO PRINCE,            :
                           : CIVIL ACTION
        Plaintiffs         :
                           :
    vs.                  :
                           :
BAC HOME LOANS SERVICING, LP, : NO. 16-CV-1544
BANK OF AMERICA, N.A., and   :
CITIMAE, INC.,           :
                           :
        Defendants        :

**MEMORANDUM AND ORDER**

**JOYNER, J.**                         **August 29, 2018**

This case is before the Court for disposition of the parties' competing motions for Summary Judgment. After full and careful review of the record in this matter, Defendant's motion for summary judgment shall be granted and Plaintiffs' motion denied.

## Factual Background

The instant action arises out of a 30-year fixed rate mortgage which the Plaintiffs, Joseph and Betty Jo Prince first obtained in 1991 from Arbor National Mortgage, Inc. on their residence in Yardley, Bucks County, Pennsylvania in the original principal amount of $256,000. As so often happens in today's world, the mortgage and note were sold and/or assigned from their

originator, with the result that they eventually became the property of Defendant Bank of America through its merger with BAC Home Loans Servicing and Citimae, Inc.[1]

The gist of this action is contained in Paragraph 2 of Plaintiffs' Second Amended Complaint ("SAC") in which Plaintiffs first contend: "despite the loan being a fixed rate note, the amounts due on the loan each month constantly fluctuated," starting "with a $2,700.00 monthly amount due." (SAC, ¶s 2D, 2E). "Throughout the life of the loan, ... Defendants have erroneously demanded different amounts due in seemingly randomly selected months," including "monthly amounts due of $3,600.00, $3,800.00 and $4,800.00, among others." (SAC, ¶s 2F, 2G). Plaintiffs then go on to aver that "[o]n multiple occasions," they "requested that Defendants provide them with accounting statements and payment histories to resolve why the monthly payments [had] fluctuated so much" but "Defendants, however, ... refused to provide any such accounting or payment history and, as a result, Defendants' random demands remain a mystery." (SAC, ¶s 2H, 2I). Regardless, "[s]ince originating the loan, Mr. and Mrs. Prince successfully made timely mortgage payments for almost twenty years without incident." (SAC, ¶ 2J).

In 2010, Plaintiffs "suffered a significant financial

---

[1]    As such, we hereafter refer to only a singular Defendant – Bank of America, N.A. ("BOA")

hardship ... when their business went bankrupt and their daughter
got sick, incurring extensive medical bills and fees." (SAC,
¶ 2K). At that time, Plaintiffs "decided to reach out to
Defendants to see if the parties could work out a loan
modification." (SAC, ¶ 2L). Plaintiffs further allege that
following that decision, they or representatives acting on their
behalf endeavored to negotiate a loan modification with
Defendant, that in response Defendant indicated that it would
extend a loan modification provided Plaintiffs submitted formal
modification applications and supporting documents, and that
Plaintiffs complied with each of Defendant's requests by timely
submitting the required applications and documentation. (SAC,
¶ 2M, 2N, 2O, 2P).

Despite Plaintiffs' purported compliance, they aver that
Defendant failed to respond to any of the loan modification
applications for nearly 6 years by which time Defendant contended
that Plaintiffs were in default, foreclosure proceedings had been
initiated on March 29, 2010 and the principal amount due was then
severely inflated "due to the arrears being so high." (SAC, ¶
2Q, 2R, 2S, 2X, 2AA). According to Plaintiffs, Defendant's
failure to respond was attributable to its desire "to accrue
additional late fees, arrearages and other costs, including
exorbitant attorneys fees against" them. (SAC, ¶ 2X). And,
Defendant has failed to provide either the payment history

requested by Plaintiffs or any accounting of Plaintiffs' payments

thereby failing to provide any proof that Plaintiffs were in

default.  (SAC, ¶s 2U, 2V, 2W).  As a result, Plaintiffs submit

that the foreclosure action and impending foreclosure sale of

their home was only averted by their agreement to the "horrible

loan modification" [at] "severely over inflated terms," which was

not a good faith action on Defendant's part, but "simply

blackmail and duress."  (SAC,  ¶s 2CC, 2DD, 2EE, 2FF, 2GG).

In disposing of Defendant's Motion to Dismiss the Second

Amended Complaint, Judge Davis[2] granted Defendant's motion in

part, dismissing Counts I, II and VI with prejudice.  The

remaining Counts – III, IV and V raising claims for violation of

Pennsylvania's Unfair Trade Practices and Consumer Protection

Law, 73 P.S. §201-1, *et. seq.*, breach of contract, and wire

fraud, which Judge Davis interpreted as potentially stating a

cause of action for civil RICO, *i.e.*, the Racketeer Influenced

and Corrupt Organizations Act, 18 U.S.C. §1962©, were left to

stand.  Inasmuch as discovery in this matter has now closed

without, according to Defendant, Plaintiffs having obtained any

evidence whatsoever in support of these claims, Defendant now

moves for the entry of judgment in its favor as a matter of law.

In obvious disagreement, Plaintiffs oppose Defendant's motion and

---

[2] This case was originally assigned to our colleague Judge Legrome
Davis, but re-assigned to the undersigned on October 3, 2017.

instead move for summary judgment in favor of themselves.

## Standards Governing Summary Judgment Motions

Summary judgment is a well-used option offered under the Federal Rules of Civil Procedure for the entry of judgment in favor of a moving party prior to trial.  In this regard, Rule 56(a) states:

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

And outlining the procedures to be used in adjudicating summary judgment motions, Rule 56© states the following:

> **(1)** *Supporting Factual Positions.*  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.*  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3)** *Materials Not Cited.*  The court need consider only the

cited materials, but it may consider other materials in the record.

> **(4) *Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

In all cases, the initial burden is on the party seeking summary judgment to point to the evidence which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); United States v. Donovan, 661 F. 3d 174, 185 (3d Cir. 2011). The court reviewing a motion for summary judgment should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Roth v. Norfalco, LLC, 651 F.3d 367, 373 (3d Cir. 2011); Scheidemantle v. Slippery Rock University, State System of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006)). The line between reasonable inferences and impermissible speculation is often "thin," but is nevertheless critical because "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." Halsey v. Pfeiffer, 750 F. 3d 273, 287 (3d Cir. 2014)(quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382, n.12 (3d Cir. 1990) and Fragale & Sons Beverage Co. v. Dill, 760 F.2d 469, 474 (3d Cir. 1985)).

Inferences must flow directly from admissible evidence. Id.

Further, an issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Stated otherwise, "[f]acts that could affect the outcome are 'material facts,' and a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." <u>Lamont v. New Jersey</u>, 637 F.3d 177, 181 (3d Cir. 2011)(citing <u>Anderson</u>, 477 U.S. at 248 and <u>Celotex</u>, 477 U.S. at 322-23).

In any event, to survive summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant. <u>Burton v. Teleflex, Inc.</u>, 707 F.3d 417, 425 (3d Cir. 2013)(quoting <u>Jakimas v. Hoffman-LaRoche, Inc.</u>, 485 F.3d 770, 777 (3d Cir. 2007)).

## Discussion

As referenced above, Plaintiffs have as their remaining claims Defendant's alleged violation of the Pennsylvania UTPCPL, breach of contract and civil RICO. We shall address each cause of action *seriatim.*

*A. Unfair Trade Practices*

"The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 2012 PA Super 60, 40 A.3d 145, 151 (Pa. Super. 2012)(quoting 73 P.S. §201-3). To be eligible to pursue a private cause of action, a plaintiff must have purchased or leased goods or services "primarily for personal, family or household purposes." 73 P.S. §201-9.2. "The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices and it is to be liberally construed to effectuate the legislative goal of consumer protection." Id.(citing Com., by Creamer v. Monumental Properties, Inc., 459 Pa. 450, 459, 329 A.2d 812, 816 (1974) and Agliori v. Metropolitan Life Insurance Co., 2005 PA Super 253, 879 A.2d 315, 318 (Pa. Super. 2005)). "In addition, the remedies of the UTPCPL are not exclusive, but are in addition to other causes of action and remedies." Boehm v. Riversource Life Insurance Co., 2015 PA Super 120, 117 A.3d 308, 321 (Pa. Super. 2015)(quoting Wallace v. Pastore, 1999 PA Super 297, 742 A.2d 1090, 1092 (Pa. Super. 1999)). The statute "provides a private cause of action to any person who, as a result of conduct that the UTPCPL prohibits, 'suffers any ascertainable loss of money or property, real or personal.'" Grimes v. Enterprise Leasing Co. Of

8

<u>Philadelphia, LLC</u>, 629 Pa. 457, 460, 105 A.3d 1188, 1190
(2014)(quoting 73 P.S. §201-9.2(a)).

Section 201-2(4) lists twenty enumerated practices which
constitute actionable "unfair methods of competition" or "unfair
or deceptive acts or practices." <u>Id</u>.(quoting <u>Bennett</u>, <u>supra</u>).
The UTPCPL also contains a catchall provision at 73 P.S. §201-
4(xxi), which prohibits "[e]ngaging in any other fraudulent or
deceptive conduct which creates a likelihood of confusion or of
misunderstanding." <u>Id</u>. Regardless of the subsection under which
a plaintiff elects to proceed, to bring a private cause of action
under the UTPCPL, a plaintiff must show that he justifiably
relied on the defendant's wrongful conduct or representation
(which may be either fraudulent or negligent) and that he
suffered harm as a result of that reliance. <u>Kirwin v. Sussman
Automotive</u>, 2016 PA Super 222, 149 A.3d 333, 335 (Pa. Super.
2016); <u>Kern v. Lehigh Valley Hospital</u>, 2015 PA Super 19, 108 A.3d
1281, 1289-1290 (Pa. Super. 2015); <u>Yocca v. Pittsburgh Steelers
Sports, Inc.</u>, 578 Pa. 479, 854 A.2d 425, 438 (Pa. 2004).

In this case, the subsection which arguably applies to
Plaintiffs' claims is that contained in Section 201-2(4)(xxi) -
"[e]ngaging in any other fraudulent or deceptive conduct creating
a likelihood of confusion or of misunderstanding." In reviewing
the evidence of record, however, we can find no evidence of an
unfair or deceptive practice, wrongful conduct, or any

misrepresentation - fraudulent or negligent - on the part of the defendant.  In fact, it appears from the record that the fluctuations in the mortgage payment amounts were as a result of the increases in Plaintiffs' property taxes and homeowners' insurance rates which were being escrowed thus necessitating fairly frequent adjustments in the monthly mortgage payments. (See, e.g., Exhibit 1G to Defendant's Memorandum in Support of Motion for Summary Judgment).  And, contrary to Plaintiffs' claims, it appears that Defendant did respond to Plaintiffs' requests for escrow analyses and payment histories, at least as of 2011.[3]  (Defendant's Exhibits 1, 1A, 1H and 1I). In the absence of any supporting evidence on Plaintiffs' part, we conclude that no jury or other finder of fact could reasonably find in their favor.  Summary judgment shall therefore be entered in favor of Defendant on Count III of Plaintiffs' Second Amended Complaint.

    *B.  Breach of Contract.*

It is axiomatic that to make out a cause of action for breach of contract under Pennsylvania law, it is incumbent upon a plaintiff to prove: (1) the existence of a contract and its essential terms, (2) breach of a contractual duty, and (3) damages.  <u>Allen-Myland, Inc. v. Garmin International, Inc.,</u> 2016

---

[3] Plaintiffs have not supplied any documents or other materials reflecting when they began asking for detailed analyses and histories on their account.

10

PA Super 107, 140 A.3d 677, 692 (Pa. Super. 2016)(citing <u>Hart v.</u>
<u>Arnold</u>, 2005 PA Super 328, 884 A.2d 316, 332 (Pa. Super. 2005));
<u>Burton v. Teleflex</u>, <u>supra</u>, 707 F.3d at 431.

Here, although it is unclear from the pleadings which
contract or contracts were allegedly breached by Defendants,
Judge Davis surmised that Plaintiffs were basing their claim for
breach upon the original mortgage itself and asserting that the
alleged breach occurred when the Defendant and its predecessors
in interest sought variable payment amounts purportedly without a
reasonable explanation.   However, as previously noted, we find
that the somewhat limited evidence which has been provided to the
Court fails to validate Plaintiffs' argument.   Again, the account
statements and payment histories which Defendant supplied to
Plaintiffs demonstrate that while their monthly mortgage payments
were indeed periodically increased, those increases were
attributable to the higher city and school taxes which were being
assessed against their property as well as the increases in the
hazard insurance premiums.   These funds were being escrowed from
the monthly mortgage payments and annually paid by the then-
mortgage holder.   (Def's Exhibits 1G, 1H, 1I).   This practice was
in keeping with the language contained in ¶2 of the Mortgage
contract itself:

> **2.   Funds for Taxes and Insurance**.   Subject to applicable
> law or to a written waiver by Lender, Borrower shall pay to
> Lender on the day monthly payments are due under the Note,
> until the Note is paid in full, a sum ("Funds") for: (a)

yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; © yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums.  These items are called "Escrow Items." ...

Given that the contract clearly contemplated and provided that Plaintiffs would pay their homeowners' insurance premiums and taxes into escrow on a monthly basis together with their payments of mortgage principal and interest, we discern no breach in Defendant's periodically increasing Plaintiffs' monthly payments to ensure that sufficient monies were in escrow to pay these obligations.  Summary judgment is therefore also entered in favor of Defendant and against Plaintiffs on Count VI of the Second Amended Complaint.

*C.  Wire Fraud/Civil RICO*

In Count V of the Second Amended Complaint, Plaintiffs aver that Defendant, through the use of electronic/wire transmissions, engaged in "the deceptive, fraudulent and unlawful taking, theft and attempted conversion of Plaintiffs' property" in violation of 28 U.S.C. §1343 with regard to Plaintiffs' attempted loan modification.  More particularly, Plaintiffs seem to be claiming that by not responding to Plaintiffs' formal loan modification applications for almost six years, Defendant violated the RICO statute.

12

18 U.S.C. §1962 describes a variety of "Prohibited

activities":

> (a) It shall be unlawful for any person who has received any income derived directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> © It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or © of this section.

Count V of Plaintiffs' Second Amended Complaint alleges

only that Defendant used "electronic transmission, including fax,

13

internet, money wire, in order to engage in deceptive and

fraudulent practices, to wit: the deceptive, fraudulent and

unlawful taking, theft and attempted conversion of Plaintiffs'

property - all of which is in violation of 18 U.S.C. §1343," and

that "there is an action for ... (RICO) ... 18 U.S.C. §§1961-

1968, because there was a 'pattern of racketeering activity'

within a ten year period." (Citations omitted).[4]  In his Order

permitting this claim to stand, Judge Davis determined that

Plaintiffs were endeavoring to plead a claim under §1962© and

quite correctly noted:

> "A civil RICO claim requires proof of four elements: (1) the
> existence of an enterprise engaged in or affecting
> interstate commerce; (2) that the defendant was employed by
> or associated with the enterprise; (3) that the defendant
> participated, directly or indirectly, in the conduct or
> affairs of the enterprise; and (4) that the defendant
> participated through a pattern of racketeering activity that
> must include the allegation of at least two racketeering
> acts.  Anulli v. Panikkar, 200 F.3d 189, 198 (3d Cir. 1999);
> see Munsif v. Cassel, 331 F. App'x 954, 958 (3d Cir. 2009).
> A plaintiff must allege 'at least two acts of racketeering
> activity' within a ten year period.  Pub. L. 91-452, Title
> IX, 84 Stat. 941, as amended, 18 U.S.C. §§1961-1968."

Order of August 8, 2017, at p. 9.  An "'enterprise' includes any

individual, partnership, corporation, association or other legal

entity, and any union or group of individuals associated in fact

although not a legal entity."  18 U.S.C. §1961(2).  As the

---

[4] "Racketeering activity" is broadly defined in Section 1961 of the RICO
statute to include, among other crimes, "(B) any act which is indictable under
any of the following provisions of title 18, United States Code: ... section
1341 [18 U.S.C. §1341] (relating to mail fraud), section 1343 [18 U.S.C.
§1343] (relating to wire fraud). ..."  18 U.S.C. §1961(B).

Supreme Court has made clear, to establish liability under RICO, one must allege and prove the existence of two distinct entities - a "person" and a separate "enterprise" that is not simply the same "person" referred to by a different name. <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161-162, 121 S. Ct. 2087, 2089-2090, 150 L. Ed.2d 198 (2001); <u>Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc</u>., 46 F.3d 258, 268-269 (3d Cir. 1995). Stated otherwise, a single person cannot be both the RICO enterprise and the RICO defendant. <u>RJR Nabisco, Inc. v. European Community</u>, 136 S. Ct. 2090, 2104, 195 L. Ed.2d 476 (2016).

At bar, Plaintiff has adduced no evidence to support a factual determination that *any* of these four elements is present. Again, as already discussed, we find no evidence of any wrongdoing on the part of Bank of America and thus we cannot find that the requisite "racketeering activity" is present in this case. Further, there is nothing in either the pleadings or in the evidentiary record which demonstrates that the distinctiveness requirement has been satisfied - Plaintiffs allege only that Bank of America itself acted. We therefore cannot find the presence of a "racketeering enterprise." For these reasons, we are compelled to enter summary judgment in Defendant's favor on Count V of the Second Amended Complaint as well.

## Conclusion

15

In view of all the foregoing, the Defendant's Motion for Summary Judgment shall be granted in its entirety and the Plaintiffs' Motion denied.  An order follows.